UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

WALTER SAYLES,
CDCR #AL-4784,

                          Plaintiff,

        vs.

SERGEANTS AMAYA and TAYLOR,

                          Defendants.

Case No.:  26-cv-0174-AJB-JLB

**ORDER:**

**(1) GRANTING FIRST MOTION TO PROCEED IN FORMA PAUPERIS,**

**(2) DENYING SECOND MOTION TO PROCEED IN FORMA PAUPERIS AS MOOT, and**

**(3) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**

On January 2, 2026, Plaintiff Walter Sayles, a state prisoner confined at Mule Creek State Prison in Ione, California, proceeding *pro se,* filed this civil rights action pursuant to 42 U.S.C. § 1983 in the District Court for the Eastern District of California, along with a Motion to proceed *in forma pauperis* ("IFP"). (Doc. Nos. 1; 2.) Plaintiff claims he was subjected to the excessive use of force while housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. (Doc. No. 1 at 3–6.) On January 8, 2026, the matter was transferred to this Court. (Doc. No. 5.) On February 2, 2026, Plaintiff filed a

1

26-cv-0174-AJB-JLB

second IFP motion (Doc. No. 8), along with a Notice of Grievance to which he has attached inmate grievances and additional allegations in support of his claims. (Doc. No. 7.)

I.      MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

Plaintiff's prison certificate shows an average monthly balance of $58.87 and average monthly deposits of $42.17 for the 6-months preceding the filing of this action, and an available balance of $0.00. (Doc. No. 2 at 2.) The Court **GRANTS** this initial motion to proceed IFP and declines to assess the initial partial filing fee of $11.77 because it appears Plaintiff has insufficient funds to pay it. *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of

26-cv-0174-AJB-JLB

funds available to him when payment is ordered.") Plaintiff remains obligated to pay the $350 filing fee pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1). Because Plaintiff has been granted leave to proceed IFP, his second IFP motion (Doc. No. 8) is **DENIED AS MOOT**.

## II.   SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.   Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

26-cv-0174-AJB-JLB

### B.      Allegations in the Complaint

Plaintiff alleges that on November 15, 2024, he informed Defendant RJD correctional officer John Doe that he had safety concerns about being on the yard. (Doc. No. 1 at 5.) As he was being taken outside to be re-housed on 15 block, he stopped walking because he feared being in on the yard. (*Id.*) He alleges that when he refused to be sent "to the hole for my safety," he "was forced to the ground with force hard on the ground by 4 correctional officers John Does." (*Id.*) Plaintiff "injured [his] leg and arm and hip from being forced to the ground . . . and was made fun of lying in the rain outside of C-yard injured and could not walk or stand due to the injuries." (*Id.*)

Plaintiff alleges that on November 19, 2024, he approached Defendant RJD correctional officer Sergeant Taylor and told Taylor he was concerned for his safety on the yard. (*Id.* at 6.) When Taylor said he was going to handcuff Plaintiff and return him to his housing unit Plaintiff refused. (*Id.*) Taylor then "used force by taking me to the ground with force for asking for help," but never addressed his safety concerns. (*Id.*)

Plaintiff alleges that on June 2, 2025, he was in the C-yard block 15 dayroom when Defendant RJD correctional officer Sergeant Amaya punched him twice in the head with his fist as Plaintiff was holding Amaya's leg to prevent being kicked. (*Id.* at 4.) As Plaintiff was being handcuffed, Amaya knelt on Plaintiff's back injuring his spine while Defendant RJD correctional officer Sergeant Jane Doe choked him. (*Id.* at 3–4.) Attached to Plaintiff's Notice of Grievance are inmate grievances he filed at Mule Creek State Prison after he was transferred there. (*Id.*) In the grievances, Plaintiff alleges he was assaulted because the Defendants let it be known around the prison that: "I am a federal employee in prison spying on corrections officers" in retaliation for Plaintiff reporting to the FBI and the United States Marshal that drugs were entering the prison through legal mail. (Doc. No. 7 at 10–11.)

Plaintiff claims the use of force during all three incidents was excessive in violation of his right to be free from cruel and unusual punishment as protected by the Eighth Amendment, and that Amaya's failure to intervene and stop Jane Doe from choking him

26-cv-0174-AJB-JLB

violated his rights under the Fourteenth Amendment. (Doc. No. 1 at 3–6.)

### C.    Analysis

The Eighth Amendment, as applicable to the states through the Fourteenth Amendment, forbids prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). It "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Prison officials have a duty to intercede when fellow officers violate the constitutional rights of a plaintiff, but liability does not attach where officers do not have a "realistic opportunity" to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000).

Nevertheless, "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners." *LeMaire v. Maas*, 12 F.3d 1444, 1458 (9th Cir. 1993); *Simmons v. G. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) ("[P]rison officials should be accorded 'wide-ranging deference' when they are exercising their judgment to maintain prison safety," because "[i]n the specialized context of prison operations, the use of force can be a 'legitimate means for preventing small disturbances from becoming dangerous to other inmates or the prison personnel.'") (citations omitted); *Whitley*, 475 U.S. at 321–22 (prison officials are entitled to deference when a prisoner challenges a use of force).

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Whitley*, 475 U.S. at 327). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9. However, "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *McMillian*, 503 U.S. at 9). The extent of the injury suffered by an inmate is one factor that may determine "whether the use of force could plausibly have been thought necessary" in the situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321; *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove . . . violates the [federal Constitution].")

With respect to the November 2024 incidents, Plaintiff alleges he "was force[ed] to the ground with force hard on the ground by" four correctional officers after refusing to be escorted to the "hole" for his safety, which resulted in him having "injured my leg and arm and hip" for which he needs physical therapy, and he "could not walk or stand due to the injuries." (Doc. No. 1 at 5.) He alleges Defendant Taylor "used force by taking me to the ground with force" in response to refusing to be handcuffed and escorted to his housing unit, but without any allegations of injury as to that incident. (*Id.* at 6.) Plaintiff's allegations regarding the amount of force used are conclusory. Plaintiff also fails to allege what, if any, resistance he offered when he refused to be escorted back to his housing unit or placed in protective custody after reporting safety concerns on the yard. Absent such facts, the Complaint does not plausibly allege that Defendants acted maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Wilkins*, 559 U.S. at 38; *McMillian*, 503 U.S. at 9; *see also Iqbal,* 556 U.S. at 678 (a complaint is subject to dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")

With respect to the June 2025 incident, Plaintiff alleges Amaya punched him twice in the head with his fist as Plaintiff was holding Amaya's leg to prevent being kicked, and

that as he was being handcuffed, Amaya knelt on his back injuring his spine while Jane Doe choked him. (Doc. No. 1 at 3–4.) Plaintiff alleges he suffered damage to his spine which requires him to use pain medication and undergo physical therapy for spinal nerve damage, and seeks to hold both Defendants liable for use of excessive force and Amaya liable for failing to prevent Jane Doe from choking him. (*Id*. at 4.) The Complaint does not contain sufficient factual allegations regarding the need for the use of force by either Defendant or the context in which the force was used to plausibly allege either Defendant applied force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Wilkins*, 559 U.S. at 38; *McMillian*, 503 U.S. at 9; *Iqbal,* 556 U.S. at 678. To state an excessive force claim against these Defendants, Plaintiff must present factual allegations regarding the circumstances under which the force was applied which plausibly alleges the use of force was intended to cause harm rather than restore order. To hold Amaya liable for failing to prevent Jane Doe from choking him, Plaintiff must set forth factual allegations which plausibly allege Amaya had a realistic opportunity to intercede and failed to take reasonable measures to guarantee his safety. *Farmer*, 511 U.S. at 832; *Cunningham*, 229 F.3d at 1289–90.

As with the two November 2025 incidents, the lack of sufficient factual allegations regarding the June 2025 incident precludes a finding that the Complaint, as drafted, plausibly alleges an Eighth Amendment claim for use of excessive force or failure to intercede. The Notice of Grievance, to the extent it is intended as an exhibit to the Complaint, presents conclusory allegations that Defendants assaulted Plaintiff because they believe him to be an FBI agent in the prison sent there to spy on correctional officers, or in retaliation for filing grievances making that allegation, which is not an adequate substitute for allegations which must be contained in the Complaint. *See Arnold v. Hearst Magazine Media, Inc*., No. 19-cv-1969-JAH-MDD, 2020 WL 3469367, at *8 (S.D. Cal. June 24, 2020) ("Exhibits attached to a complaint are not a substitute for factual allegations."); *Iqbal,* 556 U.S. at 678 ("[C]onclusory statements, do not suffice [to state a § 1983 claim]."); *Watison*, 668 F.3d at 1114 (to state a retaliation claim a prisoner must

allege facts showing a causal connection between the adverse action and protected conduct); *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.")

The Complaint is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### D.    Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## III.    CONCLUSION AND ORDERS

Good cause appearing, the Court:

1.    **GRANTS** Plaintiff's first Motion to Proceed IFP (Doc. No. 2) and **DENIES** as moot Plaintiff's Second Motion to Proceed IFP (Doc. No. 8).

2.    **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4.    **DISMISSES** the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

5.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an amended complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be complete by itself without reference

to his original Complaint. Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.") A failure to amend will result in dismissal of this action for failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated:  February 10, 2026

Hon. Anthony J. Battaglia
United States District Judge

26-cv-0174-AJB-JLB